**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Grady Glover, | ) | |
| | ) | Civil Action No. 2:18-cv-729-RMG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Southwest Airlines, Co., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("R & R") of the

Magistrate Judge (Dkt. No. 41) recommending that the Court grant Defendant's Motion for

Summary Judgment (Dkt. No. 22). For the reasons set forth below, the Court adopts the R & R as

the Order of the Court and grants Defendant's Motion.

**I.      Facts**

The Court adopts the detailed facts in the R & R, which relies largely on Plaintiff Grady

Glover's deposition.[1]  (Dkt. No. 41 at 2 – 14.)  Plaintiff was a Station Manager in Charleston,

South Carolina, for Defendant Southwest Airlines, Co. responsible for managing approximately

47 employees.  The incidents leading to this claim began in February 1, 2017, where Plaintiff

began to have a contentious relationship with one of his subordinates, an Operations Agent named

Danielle Chapman, who initially complained about her rate of pay for an overtime assignment

given while she was on vacation, and who later refused a mandatory overtime assignment from

Plaintiff.  Chapman claimed that Plaintiff yelled at her during meetings between Plaintiff,

Chapman, and Chapman's union representative, including a meeting on March 8, 2017, regarding

---

[1] The Court deals with any specific objections to the Magistrate Judge's statement of the facts in
the discussion section.

the refusal of overtime and potential discipline for the refusal of overtime, which Plaintiff denies. Chapman was ultimately issued a letter of warning and filed a complaint against Plaintiff regarding his treatment of her.

Plaintiff's supervisor, Doug Currie, traveled to Charleston to investigate the March 8th incident. Plaintiff drove Currie back to his hotel, and when discussing the incident, Currie stated that he believed the problem was due to a "generational gap."[2] Currie later told Plaintiff to remove the letter of warning to Chapman, which Plaintiff only did after reiteration from Currie. Plaintiff also failed to inform Chapman he had removed the letter. Currie asked the Plaintiff to come to Houston to meet with him on April 6, 2017, in order to discuss how the matter with Chapman could have been handled better. At the time, Plaintiff prepared a three-page letter with twenty-five pages of attachments, detailing his disagreements with Chapman's actions, Currie's managerial decisions, and stating that he believed the statement that the issue was "generational" was discriminatory. He ultimately did not give the letter to Currie and did not discuss the "age discrimination" issue. At the meeting, Currie instructed Plaintiff to sit down with Chapman.

After the meeting, Plaintiff repeatedly failed to meet with Chapman, missing a key opportunity on April 11, 2017. Plaintiff ultimately met with Chapman on April 20, 2017 but prefaced the meeting by stating Currie directed him to have the conversation. Currie sent Plaintiff a letter of expectation on May 5, 2017, based on Plaintiff's "failure to defuse an emotional situation" and failure to follow Currie's directive to meet with Chapman. The letter further stated

---

[2] Plaintiff also submitted an affidavit stating that Currie informed Plaintiff that he had an inability to manage because of "generational differences" because Chapman was much younger. (Dkt. No. 33-2 at ¶ 9.) As the Magistrate Judge correctly found, a party cannot avoid summary judgment by submitting an affidavit that conflicts with earlier testimony. *See Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 300 (4th Cir. 2006). Regardless, as explained by the Magistrate Judge and below, this statement does not create a dispute of material fact regarding Plaintiff's claims.

that future incidents could lead to discipline, including termination. Plaintiff reported Currie to Employee Relations, claiming Currie's behavior was harassing and retaliatory, and attaching the letter he had previously drafted but had not given to Currie in Houston. Plaintiff also claimed Currie's actions affected Plaintiff's "health and blood pressure."

Around May 16, 2017, Currie and two other supervisors determined that the best course of action was to separate with Plaintiff, as he had lost the ability to lead and had been insubordinate. Following that determination, Plaintiff participated in a conference call with the two supervisors, again stating that Currie was unreasonable and unjustified, and reiterating that he had not yelled at Chapman. Plaintiff was terminated on June 15, 2017. The letter stated Plaintiff was terminated for improperly handling the incident with Chapman, failed to follow Currie's direction, and had failed to improve following the letter of expectation.

After receiving a right to sue letter from the EEOC, Plaintiff filed this Complaint, claiming disability discrimination under the Americans with Disabilities Act ("ADA"), age discrimination under the Age Discrimination in Employment Act ("ADEA"), retaliation under the ADA, and a hostile work environment. (Dkt. No. 1.) After removing the case to this Court, Defendant moved for summary judgment, which Plaintiff opposed. (Dkt. Nos. 22, 33.) On June 28, 2019, the Magistrate Judge issued an R & R recommending that summary judgment be granted in favor of Defendant on all claims. (Dkt. No. 41.) Plaintiff filed objections to the R & R. (Dkt. No. 42.)

## II. Legal Standard

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the

portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) ).

### B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In

4

the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Plaintiff filed objections and the R & R is reviewed *de novo*.

## III.    Discussion

The Magistrate Judge ably assessed Plaintiff's claims here and found that there is no genuine dispute of material fact, and summary judgment should be granted to Defendant. To begin with, Plaintiff's objections often repeat his summary judgment response briefing, and largely focuses on Plaintiff's interactions with Chapman, rather than addressing the core issue here: whether there is a dispute of material fact that any of Defendant's actions were discriminatory, retaliatory or created a hostile work environment. While Plaintiff may contend Defendant did not properly assess his interactions with Chapman and management of the Charleston Station, the civil rights statutes "[do] not protect against unfair business decisions—only against decisions motivated by unlawful animus." *Rudolph v. Hechinger Co.*, 884 F. Supp. 184, 188 (D. Md. 1995). *See also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 n.4 (5th Cir. 2012) (same).

### A. Disability Discrimination

Regarding disability discrimination, the Magistrate Judge correctly applied the *McDonnell-Douglas* burden-shifting framework. Notably, the Plaintiff testified that he was not treated differently "because of his health condition," and instead his health conditions were a result of his other claims of discrimination and a hostile work environment. (Dkt. No. 22-2 at 53.) Therefore, Plaintiff cannot make out the third prong of the *prima facie* case, as he has not identified any evidence showing that he was treated differently *because of* his disability. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). Further, even if he could make

5

out a *prima facie* case, as explained below, the Court finds that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff, which Plaintiff cannot show was pretextual, which further necessitates summary judgment.

### B. Age Discrimination

Regarding age discrimination under the ADEA, Plaintiff asserts that Currie's comment that the issue with Chapman was based on a "generational gap" is direct evidence of discrimination. However, as the Magistrate Judgment correctly held, "courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." *Martin v. Alumax of S.C., Inc.*, 380 F. Supp. 2d 723, 728 (D.S.C. 2005) (citations omitted). Relying on Justice O'Connor's concurrence in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) *superseded on other grounds* by 42 U.S.C. § 2000e-2(m), Courts of Appeal have explained that "direct evidence may include employer remarks that 'reflect a discriminatory attitude'...or that demonstrate a 'discriminatory animus in the decisional process.'" *Kneibert v. Thomson Newspapers, Michigan Inc.*, 129 F.3d 444, 452 (8th Cir. 1997). *See also Martin*, 380 F. Supp. 2d at 728 ("the plaintiff must present evidence which demonstrates 'a specific link between the discriminatory animus and the challenged decision....'"). The "generational gap" statement here was made in March 2017, over two months before there was any decisional process regarding Plaintiff's potential termination, and over three months before Plaintiff was terminated. This remark, does not show that there was any discriminatory animus in the decisional process.

Further, Plaintiff cannot make out a claim using the *McDonnell-Douglas* burden shifting analysis. For purposes of summary judgment, a court may assume arguendo that a plaintiff has met his *prima facie* burden and analyze whether a defendant articulated a legitimate non-

discriminatory reason, and whether a plaintiff can show that the reason was pretextual. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000); *Fields v. Verizon Servs. Corp.*, 493 F. App'x 371, 380 (4th Cir. 2012). Defendant here has proffered a legitimate, non-discriminatory reason for Plaintiff's termination: namely, Plaintiff's alleged inappropriate handling of the incident with Chapman and failure to follow Currie's direction to promptly meet with Chapman to resolve the issue. Indeed, this position is reflected in multiple meetings and letters with Plaintiff, including the letter of expectation to Plaintiff on May 5, 2017, and the letter ultimately terminating his employment on June 15, 2017. (Dkt. No. 22-4 at 25, 57.) Finally, as the Magistrate Judge correctly held, there is no indication this proffered reason was a pretext for age discrimination. Indeed, the only evidence of alleged age discrimination is the "generational gap" comment from over two months prior to the first discussion regarding terminating Plaintiff's employment, and the reasons for the termination, namely Plaintiff's failure to meet with Chapman or defuse the situation, did not occur until after the comment. Therefore, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

## C. Retaliation

Courts similarly apply the *McDonnell Douglas* burden shifting analysis to retaliation claims under the ADEA.[3] As the Magistrate Judge correctly held, the Fourth Circuit's decision in *Buchhagen v. ICF Int'l, Inc.*, 650 F. App'x 824 (4th Cir. 2016) is instructive. As in *Buchhagen*, Plaintiff brought his complaint of age discrimination to Employee Relations as a single reference in a much larger complaint letter. *Id.* at 829. As the Court noted, a "cursory statement...in a

---

[3] As the Magistrate Judge correctly held, there is no evidence that the Plaintiff ever complained of disability discrimination prior to his termination, and therefore this claim is properly assessed under the ADEA rather than the ADA. Regardless, Plaintiff cannot carry his burden to rebut the Defendant's legitimate, non-discriminatory reason for his termination.

laundry list of other complaints" is likely insufficient for showing protected activity. Regardless, for the purposes of efficiency, as in *Buchhagen*, the Court assumes protected activity occurred here. Further, as in *Buchhagen*, Defendant's concern with Plaintiff's performance and insubordination predated any alleged protected conduct, namely the May 8, 2017 letter to Employee Relations. Indeed, Plaintiff had already had multiple meetings with Currie and had received a letter of expectation. These repeated prior issues, predating any alleged protected activity, would prevent any reasonably jury from finding Defendant's explanation pretextual. As in *Buchhagen*, Plaintiff was repeatedly informed of steps he was required to take to improve his performance and warned of potential termination if he continued to be insubordinate, prior to any protected activity. As above, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff cannot show that the reason was pretextual as the reasons pre-dated his alleged protected conduct. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### D. Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that he was subjected to (1) unwelcome harassment; (2) based on his [age or disability]; (3) that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) that is imputable to the defendant. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

While Plaintiff lays out a timeline in both his summary judgment brief and objections regarding his hostile work environment claim, the timeline focuses in part on the actions of individuals not connected to the Defendant, such as by Chapman's union representative, and also on multiple management decisions unrelated to his age or disability, such as Plaintiff being

required to fly to Houston, Currie instructing Plaintiff to remove discipline from Chapman's file, and Currie repeatedly checking with Plaintiff to see whether he had met with Chapman. Further, the single "generational gap" comment does not demonstrate that Plaintiff's "workplace is permeated with 'discriminatory intimidation, ridicule, and insult....'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In the end, a timeline of management decisions, punctuated by a single comment that arguably references Plaintiff's age, does not demonstrate that the conduct was severe or pervasive. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316 (4th Cir. 2008) (complaints based on rude treatment, callous behavior by superiors, or a difference of opinion or personality conflict with a supervisor are not actionable under Title VII). Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## IV. Conclusion

For the foregoing reasons, the R & R of the Magistrate Judge (Dkt. No. 41) is **ADOPTED** as the order of the Court and the Court **GRANTS** Defendant's Motion to Summary Judgment (Dkt. No. 22.).

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Court Judge

July 22, 2019
Charleston, South Carolina

9